ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
ROGER E. WEST
Assistant United States Attorney
First Assistant Chief, Civil Division
California State Bar No. 58609
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2461
    Facsimile: (213) 894-7819
    Email: roger.west4@usdoj.gov

Attorneys for the United States of America

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 0 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE: | CV MISC. NO. <u>MC 14-402</u> |
| LETTERS ROGATORY FROM THE | |
| CANTONAL COURT OF ZUG, | |
| SWITZERLAND | |

**NOTICE OF LODGING EXHIBIT 1 TO THE APPLICATION FOR
ORDER APPOINTING THE ASSISTANT UNITED STATES ATTORNEY
AS COMMISSIONER**

LODGED
CLERK, U.S. DISTRICT COURT

JUN 1 3 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Petitioner, United States of America, hereby lodges Exhibit 1 to the

Application for Order Appointing the Assistant United States Attorney as

Commissioner previously filed on June 6, 2014.


Dated: June 12, 2014.                    ANDRÉ BIROTTE, JR.
                                         United States Attorney
                                         LEON W. WEIDMAN
                                         Assistant United States Attorney
                                         Chief, Civil Division


                                         ROGER E. WEST
                                         Assistant United States Attorney

                                         Attorneys for United States of America

**Kanton Zug**

**Kantonsgericht**

**3. Abteilung**

**A3 2010 106**

Kantonsrichter lic.iur. St. Scherer, Referent

# LETTER OF REQUEST

In accordance with the terms of the Hague Convention on taking evidence in foreign countries in civil and commercial affairs (HBewUe70)

**I   (Items to be included in all Letters of Request)**

1   Sender *(identity and address)*
    Cantonal Court of Canton Zug, Aabachstrasse 3, POB 760, CH-6301 Zug

2   Central Authority of the Requested State *(identity and address)*
    U.S. Department of Justice, Civil Divison, Office of International Judicial Assistance, 1100 L Street N.W., Room 11006, Washington, D.C. 20530, United States of America

3   Person to whom the executed request is to be returned *(identity and address)*
    lic.iur. Stephan Scherer, Judge at Cantonal court of Canton Zug, Aabachstrasse 3, POB 760, CH-6301 Zug

**II   (Items to be included in all Letters of Request)**

4   In conformity with article 3 of the Convention, the undersigned applicant has the honour to submit the following request:

5   a   Requesting judicial authority (article 3, a) *(identity and address)*
        Cantonal Court of Canton Zug, Aabachstrasse 3, POB 760, CH-6301 Zug

    b   To the competent authority of (article 4, a) *(the requested State)*
        To the court within whose jurisdiction Fullerton, CA, is situated

EXHIBIT ___1___

Seite 2/4

6   Names and addresses of the parties and their representatives (article 3, b)

    a   Plaintiff    PilePro LLC, 10808 Fm 1625, 78767 Austin, Texas, USA
                        represented by attorney lic.iur. Urs Saal, Budin & Partner, Rue
                        Sénebier 20, Postfach 166, 1211 Genève 12

    b   Defendant    CONTEXO AG, Birkenmatt 1, 6343 Rotkreuz
                        represented by attorney MLaw Johannes Räber, Zwicky Windlin
                        & Partner, Seepark/Gartenstrasse 4, 6304 Zug

    c   Other parties

7   Nature and purpose of the proceedings and summary of the facts (article 3, c)
PilePro LLC vs. CONTEXO AG concerning retransfer of property rights and decla-
ration

State of Affairs

In this case, the Plaintiff is mainly demanding the retransfer of the property rights
that were assigned to the Defendant by way of an "Assignment Agreement" of 25
March 2010. The Plaintiff asserts that the Assignment Agreement is invalid because
Richard Heindl, who signed the Assignment Agreement for the Plaintiff, was not at
all authorized to represent the Plaintiff. Moreover, the Assignment Agreement was
first concluded after 25 March 2010 and thus back-dated. The Parties also disagree
about the purpose for which the Defendant was formed in the first place and about
who was to participate in the Defendant in the opinion of the persons who instigated
the formation.

Summoned as a witness, Humphrey Chang is to provide information on the pur-
pose of the Defendant's formation and the background and concrete circumstances
surrounding the closing of the Assignment Agreement.

8   Evidence to be obtained or other judicial acts to be performed
Questioning of a witness

III   **(Items to be completed where applicable)**

   9   Identity and address of any person to be examined (article 3, e)
      **Humphrey Chang, 1038 E Bastanchury Rd #313, Fullerton CA 92835, USA**

Seite 3/4

10   Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (article 3, f) *(or see attached list)*
Attachment:
- Questions for Witness Humphrey Chang

11   Documents or other property to be inspected (article 3, g) *(specify whether it is to be produced, copied, valued, etc.)*
Attachment:
- Copie witness's affidavit of 10 August 2011 (BB 48)
- Copie Assignment Agreement of 25 March 2010 (BB 5)
- Copie e-mail exchange between the witness and Messrs. Farroni and Harzenmoser of 21/22 April 2010 (KB 22)
- Copie e-mail exchange of 27 April and 11 May 2010 (KB 27)
- Copie e-mail from the witness to Enrico Farroni of 2 February 2010 (KB 36, p. 2)

12   Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3, h) *(In the event that the evidence cannot be taken in the manner requested, specify whether it is to be taken in such manner as provided by local law for the formal taking of evidence)*
–

13   Special methods or procedure to be followed (articles 3, i and 9)
–

14   Request for information of the time and place for the execution of the Request and identity and address of any person to be notified (article 7)
Cantonal Court of Canton Zug, Aabachstrasse 3, POB 760, CH-6301 Zug

15   Request for attendance of judicial personnel of the requesting authority at the execution of the Letter of Request (article 8)
–

16   Specification of privilege or duty to refuse to give evidence under the law of the State of origin (article 11, b)
Attachment:
- Extract from the Civil Procedure Code for the Canton of Zug of 3 October 1940

Seite 4/4

17   The fees and costs incurred which are reimbursable under the second paragraph of
article 14 or under article 26 of the Convention will be borne by *(identity and ad-
dress)*
Cantonal Court of Canton Zug, Aabachstrasse 3, POB 760, CH-6301 Zug

IV   (Items to be included in all Letters of Request)

18   Date of request: 9 August 2013

19   Signature and seal of the requesting authority

Cantonal Court of Canton Zug
3rd division

lic.iur. St. Scherer
Cantonal Court Judge



 **Kanton Zug**                                    **Kantonsgericht**

---

**3. Abteilung**                                           **A3 2010 106**

Kantonsrichter lic.iur. St. Scherer, Referent

# R E C H T S H I L F E E R S U C H E N

gemäss Haager Übereinkommen über die Beweisaufnahme im Ausland in Zivil- oder
Handelssachen (HBewÜe70)

**I**     **(Diese Punkte sind in allen Rechtshilfeersuchen aufzuführen)**

    1    Absender *(Bezeichnung und Adresse)*
        Kantonsgericht des Kantons Zug, Aabachstrasse 3, Postfach 760, CH-6301 Zug

    2    Zentralbehörde des ersuchten Staates *(Bezeichnung und Adresse)*
        U.S. Department of Justice, Civil Divison, Office of International Judicial Assistance,
        1100 L Street N.W., Room 11006, Washington, D.C. 20530, United States of
        America

    3    Person an welche die Erledigungsakten zurückgesandt werden sollen *(Bezeich-nung und Adresse)*
        lic.iur. Stephan Scherer, Kantonsrichter, Aabachstrasse 3, Postfach 760, 6301 Zug

**II**    **(Diese Punkte sind in allen Rechtshilfeersuchen aufzuführen)**

    4    Die ersuchende Stelle beehrt sich nach <u>Art. 3</u> des Übereinkommens das folgende
        Ersuchen zu stellen:

    5    a    Ersuchende Justizbehörde *(Art. 3 lit a) (Bezeichnung und Adresse)*
            Kantonsgericht des Kantons Zug, Aabachstrasse 3, Postfach 760,
            CH-6301 Zug

        b    An die zuständige Behörde von (Art. 3 lit a) *(im ersuchten Staat)*
            An das für Fullerton, CA, zuständige Gericht

Seite 2/4

6    Namen und Adressen der Parteien und ihrer Vertreter (Art. 3 lit. b)

    a    Kläger             PilePro LLC, 10808 Fm 1625, 78767 Austin, Texas, USA
                                 vertreten durch RA lic.iur. Urs Saal, Budin & Partner, Rue
                                 Sénebier 20, Postfach 166, 1211 Genève 12

    b    Beklagter       CONTEXO AG, Birkenmatt 1, 6343 Rotkreuz
                                 vertreten durch RA MLaw Johannes Räber, Zwicky Windlin
                                 & Partner, Seepark/Gartenstrasse 4, 6304 Zug

    c    Andere Parteien


7    Art und Gegenstand der Rechtssache sowie gedrängte Darstellung des Sachver-
    haltes (Art. 3 lit. c)
    PilePro LLC gegen CONTEXO AG betreffend Rückübertragung von Schutzrechten
    und Feststellung

    Sachverhalt

    Im vorliegenden Prozess verlangt die Klägerin in erster Linie die Rückübertragung
    der Schutzrechte, die der Beklagten mit "Assignment Agreement" vom 25. März
    2010 übertragen worden sind. Die Klägerin macht geltend, das "Assignment Ag-
    reement" sei ungültig, weil Richard Heindl, der das "Assignment Agreement" für
    die Klägerin unterzeichnet habe, für sie gar nicht vertretungsbefugt gewesen sei.
    Zudem sei das "Assignment Agreement" erst nach dem 25. März 2010 abge-
    schlossen und somit rückdatiert worden. Uneinig sind sich die Parteien auch dar-
    über, zu welchem Zweck die Beklagte überhaupt gegründet worden ist und wer
    nach Auffassung derjenigen Personen, welche die Gründung veranlasst haben,
    an der Beklagten beteiligt sein sollte.

    Der als Zeuge angerufene Humphrey Chang soll über den Zweck der Gründung
    der Beklagten sowie die Hintergründe und konkreten Umstände des Abschlusses
    des "Assignment Agreement" Auskunft geben.


8    Beweisaufnahme oder andere gerichtliche Handlungen, die vorgenommen werden
    sollen (Art. 3 lit. d)
    Zeugenbefragung


III  **(Diese Punkte sind je nach Sachlage aufzuführen)**

9    Namen und Adressen der einzuvernehmenden Personen (<u>Art. 3</u> lit. e)
    **Humphrey Chang, 1038 E Bastanchury Rd #313, Fullerton CA 92835, USA**

Seite 3/4

10  Fragen, welche an die einzuvernehmenden Personen gerichtet werden sollen oder die
    Tatsachen, über die sie einvernommen werden sollen (Art. 3 lit. f)
    *(evtl. siehe Beilage)*
    Beilage:
    -  Fragen an den Zeugen Humphrey Chang


11  Urkunden oder andere Gegenstände, die geprüft werden sollen (Art. 3 lit. g) *(angeben,
    ob in Original oder Kopie oder Zusammenfassung gewünscht)*
    Beilagen:
    -  Kopie Affidavit des Zeugen vom 10. August 2011 (BB 48)
    -  Kopie Assignment Agreement vom 25. März 2010 (BB 5)
    -  Kopie E-Mail-Austausch zwischen dem Zeugen und den Herren Farroni und
       Harzenmoser vom 21./22. April 2010 (KB 22)
    -  Kopie E-Mail-Austausch vom 27. April 2010 bzw. 11. Mai 2010 (KB 27)
    -  Kopie E-Mail des Zeugen vom 2. Februar 2010 an Enrico Farroni (KB 36, S. 2)


12  Antrag, die Einvernahme unter Eid oder Bekräftigung durchzuführen, und gegebenen-
    falls die dabei zu verwendende Formel *(Art. 3 lit. h) (wenn in der verlangten Form nicht
    möglich, festhalten, ob ersuchte Behörde die Einvernahme in der ortsüblichen Form
    durchführen darf)*
    –


13  Antrag eine besondere Form gem. Art. 9 einzuhalten (Art. 3 lit. i)
    –


14  Verlangte Benachrichtigung von Zeitpunkt und Ort der Erledigung des Ersuchens, Na-
    men und Adressen der zu benachrichtigenden Personen (Art. 7)
    Kantonsgericht des Kantons Zug, Aabachstrasse 3, Postfach 760, CH-6301 Zug


15  Antrag auf Anwesenheit der ersuchenden Behörde bei der Erledigung des Ersuchens
    (Art. 8)
    –


16  Vermerk, dass nach dem Recht des ersuchenden Staates ein Aussageverweigerungs-
    recht oder Aussageverbot vorgesehen ist (Art. 11 lit. b)
    Beilage:
    -  Auszug aus der Zivilprozessordnung für den Kantons Zug vom 3. Oktober 1940
       (§ 168 und § 169)

Seite 4/4

17   Gebühren und Auslagen, für welche gemäss <u>Art. 14</u> Abs. 2 und <u>Art. 26</u> eine Erstattung verlangt werden darf, werden bezahlt von *(Bezeichnung und Adresse)* Kantonsgericht des Kantons Zug, Aabachstrasse 3, Postfach 760, CH-6301 Zug

IV   **(Diese Punkte sind in allen Rechtshilfeersuchen aufzuführen)**

18   Datum des Ersuchens: 9. August 2013

19   Unterschrift und Stempel der ersuchenden Behörde:

Kantonsgericht des Kantons Zug
3. Abteilung

lic.iur. St. Scherer
Kantonsrichter



Examination of Witness Humphrey Chang, 1038 E Bastanchury Rd #313, Fullerton CA 92835, USA

in the matter: PilePro LLC vs. CONTEXO AG for the retransfer of property rights and declaration

(A3 2010 106)

I.      Questions of the Court

1.      Is the witness related by blood or marriage to the parties or the officers thereof or is he friends with them or connected financially to them?

2.      Did the witness work in the period from 2007 to 2010 for the Plaintiff or a company related to it? If yes, in what capacity and position?

3.      Does the witness still practice this activity? If not, since when has he not done so?

4.      Does the witness have a direct interest in the outcome of this case?

5.      Did the witness speak in advance with anyone about this case?

6.      Did the witness see the record of this case?

7.      Was the witness influenced with respect to today's examination?

8.      On whose behalf was Contexo AG formed?

9.      What purpose was Contexo AG to serve?

10.     According to the persons who commissioned the formation, who was supposed to participate in Contexo AG?

Presenting the witness's affidavit of 10 August 2011 (BB 48)
11.     Is the witness's account in this affidavit true that it was decided at a meeting in Austin on 18 February 2010 to have the patents that had been assigned to Contexo AG also registered in the name of Contexo AG? If yes, who participated in this meeting?

12.     Was Richard Heindl commissioned at this meeting to draft a corresponding assignment agreement? If yes, by whom?

Presenting the Assignment Agreement of 25 March 2010 (BB 5)
13.     Was the Assignment Agreement signed in Wohlen on 25 March 2010? If yes, was the witness present at that time?

14.     In the witness's perception, did Roberto Wendt likewise approve this agreement? If yes, in what form?

15.  In Recital 1 of the Assignment Agreement, it is noted that PilePro LLC sold the non-US property rights to Contexo AG in an agreement dated 21 December 2007. Did such an agreement actually exist?

16.  If yes, when was this agreement concluded, by whom and in what form?

17.  Did the amount of the purchase price for the property rights form part of the agreement?

## II.    Additional Questions of the Plaintiff

Presenting the e-mail exchange between the witness and Messrs. Farroni and Harzenmoser of 21/22 April 2010 (KB 22)
Question 10a:
What is to be understood by "50% German shareholder of our mutual client"?

Presenting the e-mail exchange of 27 April and 11 May 2010 (KB 27)
Question 17:
What is to be understood by "purchase agreement of the patents"? Did the witness forward this query to Mr. Dwight Williams? If yes, why?

Presenting the e-mail from the witness to Enrico Farroni of 2 February 2010 (KB 36, p. 2)
Question 18:
What is to be understood by "Please consider this email as 1 signature of 2 recommendation for payment release"?

## III.    Additional Questions of the Defendant

1.  Is it true that the witness was decisively involved in the setup of the Defendant?

2.  Why was the Defendant formed?

3.  Is it true that the idea behind the Defendant's formation was to assign all non-US patents to the Defendant?

4.  Was Richard Heindl ever a shareholder of the Plaintiff?

5.  If yes, is he still a shareholder today?

6.  If Question 5 is answered in the negative: Why and on what basis is he no longer a shareholder?

7.  Was Richard Heindl ever a decision-maker at the Plaintiff?

8.  If yes, is Richard Heindl still a decision-maker at the Plaintiff today?

9.  If Question 8 is answered in the negative: Who decided about the restructuring of the Plaintiff and when and on what basis?

10. <u>Presenting the e-mail from the witness to Enrico Farroni of 21 April 2010 (KB 22):</u>
In this e-mail, the witness told the members of the Defendant's board of directors that no payment to Richard Heindl should be triggered. Around this date, Richard Heindl was, in his own words, "booted out" by Roberto Wendt. Was the witness influenced by Roberto Wendt in his dealings with Richard Heindl at this time?

11. Did Roberto Wendt instruct the witness about certain action in dealing with Richard Heindl?

12. Can the witness confirm that from the formation until he was "booted out," Richard Heindl issued instructions and orders to the Defendant with the knowledge of all parties, namely with the knowledge of the witness and Roberto Wendt?

13. Is it true that the disputed patents were transferred by the Plaintiff to the Defendant at the end of 2007? If yes, in what form did the decision-makers approve?

14. Were there any reasons for the witness to doubt the approval of the decision-makers?

**Kanton Zug**                                    **Kantonsgericht**

**Zeugenbefragung von Humphrey Chang, 1038 E Bastanchury Rd #313, Fullerton CA 92835, USA**

**in Sachen PilePro LLC gegen CONTEXO AG betreffend Rückübertragung von Schutzrechten und Feststellung**

**(A3 2010 106)**

 

I.    **Fragen des Gerichts**

1.    Ist der Zeuge mit den Parteien bzw. deren Organen verwandt, verschwägert, befreundet oder wirtschaftlich verbunden?

2.    War der Zeuge in den Jahren 2007 bis 2010 für die Klägerin oder eine ihr nahestehende Gesellschaft tätig? Wenn ja, in welcher Funktion und Stellung?

3.    Übt der Zeuge diese Tätigkeit auch heute noch aus? Wenn nein, seit wann nicht mehr?

4.    Hat der Zeuge ein unmittelbares Interesse am Prozessausgang?

5.    Hat der Zeuge vorgängig mit jemandem über den vorliegenden Prozess gesprochen?

6.    Hatte der Zeuge Einblick in die Akten des vorliegenden Prozesses?

7.    Wurde der Zeuge mit Bezug auf die heutige Befragung beeinflusst?

8.    In wessen Auftrag wurde die Contexo AG gegründet?

9.    Welchem Zweck sollte die Contexo AG dienen?

10.   Wer sollte nach den Vorstellungen derjenigen Personen, welche die Gründung in Auftrag gegeben haben, an der Contexo AG beteiligt sein?

Vorhalt Affidavit des Zeugen vom 10. August 2011 (BB 48)
11.   Trifft die Darstellung des Zeugen in dieser Affidavit zu, wonach an einem Treffen in Austin vom 18. Februar 2010 beschlossen worden sei, die an die Contexo AG übertragenen Patente auch im Namen der Contexo AG registrieren zu lassen? Wenn ja, wer nahm an diesem Treffen teil?

12.   Wurde Richard Heindl an diesem Treffen damit beauftragt, einen entsprechenden Übertragungsvertrag ("Assignment Agreement") auszuarbeiten? Wenn ja, von wem?

Vorhalt Assignment Agreement vom 25. März 2010 (BB 5)
13.   Wurde das Assignment Agreement am 25. März 2010 in Wohlen unterschrieben? Wenn ja, war der Zeuge zu jenem Zeitpunkt anwesend?

14.   Hat Roberto Wendt diesem Vertrag nach der Wahrnehmung des Zeugen ebenfalls zugestimmt? Wenn ja, in welcher Form?

Seite 2/3

15.   In Ziff. 1 der Präambel zum Assignemt Agreement wird darauf verwiesen, dass die PilePro LLC in einer Vereinbarung vom 21. Dezember 2007 die Nicht-US-Schutzrechte an die Contexo AG veräussert habe. Hat es eine solche Vereinbarung tatsächlich gegeben?

16.   Wenn ja, wann wurde diese Vereinbarung zwischen welchen Personen in welcher Form geschlossen?

17.   War auch die Höhe des Kaufpreises für die Schutzrechte Gegenstand der Vereinbarung?


II.   Zusatzfragen der Klägerin

Vorhalt E-Mail-Austausch zwischen dem Zeugen und den Herren Farroni und Harzenmoser vom 21./22.4.2010 (KB 22)
Frage 10a:
Was ist unter "50% German Shareholder of our mutual client" zu verstehen?

Vorhalt E-Mail-Austausch vom 27.4.2010 bzw. 11.5.2010 (KB 27)
Frage 17:
Was ist unter "Kaufvertrag der Patente" zu verstehen? Hat der Zeuge diese Anfrage an Herrn Dwight Williams weitergeleitet? Wenn ja, weshalb?

Vorhalt E-Mail des Zeugen vom 2. Februar 2010 an Enrico Farroni (KB 36, S. 2)
Frage 18:
Was ist unter "Please consider this email as 1 signature of 2 recommendation for payment release" zu verstehen?


III.   Zusatzfragen der Beklagten

1.   Trifft es zu, dass der Zeuge massgeblich am Aufbau der Beklagten beteiligt war?

2.   Wozu sollte die Beklagte gegründet werden?

3.   Trifft es zu, dass die Idee der Gründung der Beklagten war, sämtliche nichtamerikanischen Patente auf die Beklagte zu übertragen?

4.   War Richard Heindl je Aktionär der Klägerin?

5.   Falls ja, ist er heute noch Aktionär?

6.   Falls die Frage 5 verneint wird: Warum und auf welcher Grundlage ist er nicht mehr Aktionär?

7.   War Richard Heindl je Entscheidungsträger bei der Klägerin?

Seite 3/3

8.   Falls ja, ist Richard Heindl heute noch Entscheidungsträger bei der Klägerin?

9.   Falls Frage 8 verneint wird: Wer hat wann die allfälligen Umstrukturierungen der Klägerin auf welcher Grundlage entschieden?

10.  <u>Vorhalt der E-Mail des Zeugen an Enrico Farroni vom 21. April 2010 (KB 22):</u>
     In dieser E-Mail teilte der Zeuge den Verwaltungsräten der Beklagten mit, dass eine Zahlung an Richard Heindl nicht ausgelöst werden solle. Um dieses Datum herum wurde Richard Heindl gemäss eigener Formulierung von Roberto Wendt "ausgebootet". Wurde der Zeuge in dieser Zeit in seinen Handlungen im Umgang mit Richard Heindl von Roberto Wendt beeinflusst?

11.  Hat Roberto Wendt den Zeugen instruiert über gewisse Schritte im Umgang mit Richard Heindl?

12.  Kann der Zeuge bestätigen, dass Richard Heindl seit der Gründung und bis zu seiner "Ausbootung" in Kenntnis aller Beteiligten - namentlich in Kenntnis des Zeugen und von Roberto Wendt - Instruktionen und Weisungen an die Beklagte erteilte?

13.  Trifft es zu, dass die strittigen Patente Ende 2007 von der Klägerin auf die Beklagte übertragen wurden? Wenn ja, in welcher Form haben die Entscheidungsträger zugestimmt?

14.  Gab es irgendwelche Anhaltspunkte, die den Zeugen am Einverständnis der Entscheidungsträger zweifeln liessen?

Extract

from the

**Civil Procedure Code for the Canton of Zug**
of 3 October 1940

...

§ 168

3. Duty to Testify
a) Scope

Every person is obliged to respond to a summons as witness and to answer the questions posed to him or her by the judge to the best of his or her knowledge and belief. The following persons may refuse to give testimony:

1.  the spouse, fiancée, partner living together in a *de facto* life-long partnership or in a registered partnership of a party, the relatives of a party by blood or marriage in direct line or to the second degree of the collateral line;
2.  clergy, physicians, lawyers and civil servants as well as members of social security agencies and social workers active in private social services concerning secrets which have been entrusted to them in the exercise of their offices or professions;
3.  persons who credibly represent that testimony about the questions posed to them would be detrimental to their marriage or would make them personally liable.

If the witness is released by the parties from the duty to maintain secrecy, the witness may be obliged to testify.

§ 169

b)   Professional, Industrial and Trade Secrets

At the free discretion of the judge, the witness may be released from communicating professional, industrial and trade secrets.

...

 Kanton Zug

Kantonsgericht

Auszug

aus der

**Zivilprozessordnung für den Kanton Zug**
vom 3. Oktober 1940

...

§ 168

**3. Zeugnispflicht**
a) Umfang

Jedermann ist verpflichtet, dem Rufe als Zeuge Folge zu leisten und die ihm vom Richter vorgelegten Fragen nach bestem Wissen und Gewissen zu beantworten. Die Ablegung des Zeugnisses dürfen verweigern:

1. der Ehegatte, der Verlobte, in einer faktischen Lebensgemeinschaft oder in eingetragener Partnerschaft zusammenlebende Partnerinnen oder Partner, die Verwandten oder Verschwägerten einer Partei in gerader Linie und im zweiten Grad der Seitenlinie;
2. Seelsorger, Ärzte, Rechtsanwälte und Beamte sowie Mitglieder der Sozialbehörden und in privaten Sozialdiensten tätige Sozialarbeiter über Geheimnisse, die ihnen bei der Ausübung ihres Amtes oder Berufes anvertraut werden;
3. Personen, die glaubwürdig versichern, dass die Aussage über die an sie gestellten Fragen ihrer Ehre nachteilig sei oder sie persönlich verantwortlich machen würde.

Wenn der Zeuge durch die Beteiligten von der Geheimhaltungspflicht entbunden wird, kann er zum Zeugnis verpflichtet werden.

§ 169

b) Berufs-, Fabrikations- und Geschäftsgeheimnis

Die Mitteilung von Berufs-, Fabrikations- und Geschäftsgeheimnissen kann dem Zeugen nach freiem Ermessen des Richters erlassen werden.

...

Zwicky Windlin & Partner
Beilage Nr. 18

BB48

## Affidavit

Being fully aware of the importance of an affidavit and that I may be subject to criminal persecution in case any of the following statements is intentionally or negligently wrong, and that this affidavit will be filed with a German Court of Appeal being a competent authority to receive such affidavit, I hereby declare

### on Oath:

1. My name is Humphrey Chang, with legal domicile in the County of Orange, State of California, USA.

2. From 2007 until April 2011 I served as Chief Financial Officer of PilePro LLC and PilePro Sales Corp.

3. Mr. Wendt made me sign three affidavits which were filed with the Dusseldorf Court of Appeal, Case number I-2 W 58/10 (Exhibits ASt 36, 61 and 62a). As I am no longer bound by any contractual obligations to Mr. Wendt, I would like to withdraw in particular my affidavit filed as Exhibit ASt 62a, as its contents was dictated by Mr. Wendt, and does not reflect the entire truth.

4. During the meeting on February 18, 2010 in Austin Texas we agreed that the patents assigned to Contexo AG should be also recorded in the name of that company, as we expected that German tax authorities would otherwise question the licensing payments from Wallprofile GmbH to Contexo AG. Mr. Wendt and Mr. Heindl then instructed Mr. Weigel to file respective requests with the competent patent offices as soon as possible.

## Eidesstattliche Versicherung

In Kenntnis der Bedeutung einer eidesstattlichen Versicherung und der strafrechtlichen Folgen wissentlich oder fahrlässig falscher Angaben, sowie in Kenntnis der Tatsache, dass diese eidesstattliche Versicherung einem zur Entgegennahme von eidesstattlichen Versicherungen befugten Oberlandesgericht vorgelegt werden soll, versichere ich Folgendes

### an Eides statt:

1. Mein Name ist Humphrey Chang, wohnhaft County of Orange, Kalifornien, USA.

2. Von 2007 bis April 2011 war ich Chief Financial Officer der PilePro LLC und der PilePro Sales Corp.

3. Herr Wendt veranlasste, dass ich drei eidesstattliche Versicherungen unterzeichnete, die beim Oberlandesgericht Düsseldorf im Verfahren mit dem Aktenzeichen I-2 W 58/10 (Anlagen ASt 36, 61 und 62a) eingereicht wurden. Da ich nicht mehr vertraglich gegenüber Herrn Wendt verpflichtet bin, möchte ich insbesondere meine Erklärung, die als Anlage ASt 62a eingereicht wurde, widerrufen, da ihr Inhalt von Herrn Wendt diktiert wurde und nicht die volle Wahrheit wiedergibt.

4. Während des Treffens in Austin, Texas am 18.02.2010 besprachen wir, dass die an die Contexo AG übertragenen Patente auch im Namen dieses Unternehmens registriert werden sollten, da wir erwarteten, dass deutsche Steuerbehörden ansonsten die Lizenzzahlungen von

5. During the meeting on April 29, 2010 in Munich Mr. Weigel reported that all documents for the agreed recordation of the assignment are prepared and asked Mr. Wendt whether he shall proceed filing these requests with the competent patent offices. Mr. Wendt confirmed that Mr. Weigel shall proceed with the recordation. I cannot exclude that Ms. Sabine Weigel was present when this conversation took place.

Date, Place

TS, AUGUST 10TH, 2011

Humphrey Chang

der Wallprofile GmbH an die Contexo AG in Frage stellen würden. Herr Wendt und Herr Heindl beauftragten daraufhin Herrn Weigel, die entsprechenden Anträge bei den zuständigen Patentämtern so bald wie möglich einzureichen.

5. Während des Treffens am 29.04.2010 in München berichtete Herr Weigel, dass alle Unterlagen für die beschlossene Umschreibung vorbereitet seien und fragte Herrn Wendt, ob er mit der Einreichung der Anträge bei den zuständigen Patentämtern fortfahren solle. Herr Wendt bestätigte, dass Herr Weigel mit der Umschreibung fortfahren solle. Ich kann nicht ausschließen, dass Frau Sabine Weigel gegenwärtig war, als diese Unterhaltung stattfand.

ßß 5

> Zwicky Windlin & Partner
> Beilage Nr. 5

# Übertragungsvereinbarung

## Assignment Agreement

zwischen - between

PilePro LLC
1601 Mount Rushmore Road,
Suite 3-263
Rapid City, SD 57701
U.S.A.

vormaliger Sitz – former place of business

PilePro LLC
297 Pacific Street
Brooklyn, NY-11201
U.S.A.

nachfolgend – PILEPRO          in the following called – PILEPRO

vertreten durch Richard Heindl als CEO von PILEPRO
represented by Richard Heindl as CEO of PILEPRO

und - and

Contexo AG
Birkenmatt 1
6343 Rotkreuz-Zug
Schweiz

nachfolgend – CONTEXO          in the following called – CONTEXO

vertreten durch Dr. Enrico Farroni, Ph. D. als Präsident des Verwaltungsrates
represented by Dr. Enrico Farroni, Ph. D. as Chairman of the Board of Directors

## Präambel

(1) PILEPRO hat im Rahmen einer Vereinbarung vom 21. Dezember 2007 sämtliche zum damaligen Zeitpunkt angemeldeten und eingetragenen Schutzrechte sowie sämtliche Rechte an zukünftig anzumeldenden Schutzrechten, mit Ausnahme der Schutzrechte und Rechte, die für das Staatsgebiet der Vereinigten Staaten von Amerika wirksam sind oder wirksam werden, an CONTEXO veräußert.

(2) Mit Unterzeichnung dieser Vereinbarung sind PILEPRO sowie mit PILEPRO verbundene Unternehmen verpflichtet, Produkte für Rückhaltewandsystemen außerhalb des Staatsgebietes der Vereinigten Staaten von Amerika nur mehr mit Zustimmung von CONTEXO zu vermarkten und derartige Produkte ausschließlich von CONTEXO oder von einem durch CONTEXO lizensierten Unternehmen zu beziehen.

## Preambel

(1) Based on an agreement dated December 21, 2007 PILEPRO has sold all protective rights which were pending and registered at that date as well as all rights related to protective rights to be filed in the future to CONTEXO, with the exception of those protective rights and rights being or will be effective for the United States of America.

(2) Upon signing of this agreement PILEPRO as well as companies affiliated to PILEPRO are obliged not to marketing products related to retaining wall systems outside the United States of America without the expressive allowance of and to exclusively purchase such products only from CONTEXO or from a company licensed by CONTEXO.



§ 1 Definitionen

(1) Unter dem Begriff „Schutzrechte"
werden in der vorliegenden Vereinba-
rung Patente, Patentanmeldungen,
Marken, Markenanmeldungen, Ge-
brauchsmuster, Gebrauchsmuster-
anmeldungen sowie Geschmacks-
muster- und Geschmacksmusteran-
meldungen verstanden, die keine
Wirkung für die Vereinigten Staaten
von Amerika haben.

(2) Unter dem Begriff „Benutzen" wird
in der vorliegenden Vereinbarung das
Besitzen, Herstellen, in den Markt
bringen, Anbieten und/oder Veräu-
ßern von Gegenständen verstanden,
die in den Schutzrechten erfasst sind.

(3) Unter dem Begriff „technische
Dokumentation" werden in der vorlie-
genden Vereinbarung sämtliche das
technische Know-how betreffende
technische Unterlagen, wie techni-
sche Zeichnungen, Versuchsproto-
kolle, etc., sowie elektronische Da-
tensätze verstanden, die zur Reali-
sierung der in den Schutzrechten
definierten Gegenstände erforderlich
sind.

§ 1 Definitions

(1) In the present agreement the term
"protective rights" means patents,
patent applications, trademarks,
trademark applications, utility models,
utility model applications, designs
and design applications which do not
have effect in the United States of
America.

(2) In the present agreement the term
"use" means owing, producing, mar-
keting, offering and/or selling of sub-
ject-matters covered by the protective
rights.

(3) In the present agreement the term
"technical documentation" means the
entire documentation which refers to
the relevant know-how , like technical
drawings, test-reports, etc., as well
as electronic data which are neces-
sary to realize the subject-matters
defined in the protective rights.

(4)   Unter dem Begriff „Produkte für Rückhaltewandsysteme" werden in der vorliegenden Vereinbarung insbesondere Verbinder für Spundbohlen, Rohre und Träger, Anschweißprofile für Spundbohlen, Rohre und Träger sowie Dichtungsmittel zum Abdichten von Schlössern verstanden.

(4)   In the present agreement the term "products related to retaining wall systems" means in particular connectors for sheet piles, tube piles and beams, weld-on connectors for sheet piles, tube piles and beams as well as sealing material for the sealing of interlocks.

## § 2 Übertragung

Hiermit überträgt PILEPRO die nachfolgend aufgeführten Schutzrechte sowie alle mit diesen verbundenen Rechte an CONTEXO:

## § 2 Assignment

Herewith PILEPRO assigns the following listed protective rights as well as all legal effects connected thereto to CONTEXO:

### BR (Brasilien - Brazil):

Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| PI 0518083-0 | P1-39-PWOBR |
| PI 0509429-1 | P-40-PWOBR |
| PI 0510856-0 | P1-41-PWOBR |
| PI 0606559-7 | P1-43-PWOBR |
| PI 0606566-0 | P1-44-PWOBR |
| PI 0616494-3 | P1-50-PWOBR-1 |
| PI 0616559-1 | P1-50-PWOBR-2 |
| PI 0802340-9 | P1-58-PBR |
| PI 0801799-9 | P1-63-PBR |

Geschmacksmuster – Designs:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| DI 6602131-6 | P1-54-DBR |

## CA (Kanada – Canada):

Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| CA 2,588,945 | P1-39-PWOCA |
| CA 2,596,647 | P1-43-PWOCA |
| CA 2,596,823 | P1-44-PWOCA |
| CA 2,618,193 | P1-50-PWOCA-1 |
| CA 2,618,190 | P1-50-PWOCA-2 |
| CA 2,644,371 | P1-56-PWOCA |
| CA 2,634,570 | P1-58-PCA |
| CA 2,630,274 | P1-63-PCA |

Geschmacksmuster – Designs:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| CA 116,434 | P1-54-DCA |

## CN (China – China):

### Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| CN 2005 800 473 07.6 | P1-39-PWOCN |
| CN 2005 800 206 88.9 | P1-40-PWOCN |
| CN 2005 800 226 44.X | P1-41-PWOCN |
| CN 2006 800 097 49.6 | P1-43-PWOCN |
| CN 2006 800 097 43.9 | P1-44-PWOCN |
| CN 2006 800 370 07.4 | P1-50-PWOCN-1 |
| CN 2006 800 369 17.0 | P1-50-PWOCN-2 |
| CN 2007 800 157 13.3 | P1-56-PWOCN |
| CN 2008 100 938 91.4 | P1-63-PCN |
| CN 2009 100 019 89.7 | P1-69-PCN |

### Geschmacksmuster – Designs:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| CN 2006 301 209 51.9 | P1-54-DCN |



<u>DE (Deutschland: - Germany):</u>

<u>Patente – Patents:</u>

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| 197 16 685.7 | P1-2-PDE |
| 197 25 454.3 | P1-3-PDE |
| 197 25 143.9 | P1-4-PDE |
| 598 06 452.4 | P1-4-PEPDE |
| 198 22 997.6 | P1-7-PDE |
| 101 07 374.7 | P1-19-PDE |
| 101 60 125.5 | P1-29-PDE |
| 103 07 414.7 | P1-34-PDE |
| 103 18 769.3 | P1-37-PDE |
| 10 2004 019 953.1 | P1-40-PDE |
| 10 2004 024 103.1 | P1-41-PDE |
| 10 2005 037 027 | P1-45-PDE-2 |
| 10 2006 000 624 | P1-50-PDE-2 |
| 10 2006 000 623 | P1-50-PDE-3 |
| 10 2005 061 721 | P1-51-PDE |
| 10 2006 041 049 | P1-57-PDE |
| 10 2006 060 811 | P1-59-PDE |
| 10 2007 020 747 | P1-63-PDE |
| 10 2007 015 455 | P1-64-PDE |
| 10 2007 027 940 | P1-58-PDE |
| 10 2007 027 939 | P1-66-PDE |
| 10 2008 006 353 | P1-69-PDE |

<u>Geschmacksmuster – Designs:</u>

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| 498 09 834.6 | P1-4-DDE |
| 499 03 430.9 | P1-7-DDE |



| | |
|---|---|
| 401 02 037.1 | P1-10-DDE |
| 498 11 972.6 | P1-12-DDE |
| 499 03 195.4 | P1-14-DDE |
| 499 07 885.3 | P1-15-DDE |
| 499 10 875.2 | P1-16-DDE |
| 499 10 323.8 | P1-17-DDE |
| 400 00 449.6 | P1-18-DDE |
| 401 03 341.4 | P1-20-DDE |
| 401 05 737.2 | P1-21-DDE |
| 401 06 769.6 | P1-22-DDE |
| 401 07 097.2 | P1-23-DDE |
| 401 07 964.3 | P1-24-DDE |
| 401 08 148.6 | P1-25-DDE |
| 401 08 475.2 | P1-26-DDE |
| 402 06 101.2 | P1-31-DDE |
| 402 09 884.5 | P1-33-DDE |
| 403 01 031.4 | P1-35-DDE |
| 403 05 583.0 | P1-38-DDE |

Die Übertragung betrifft jeweils alle Geschmacksmuster, die unter dem jeweiligen Aktenzeichen erfasst sind.

Die Assignment includes all designs recorded under the respective file number.

<u>Gebrauchsmuster – Utility Models:</u>



| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| 200 17 445.2 | P1-9-GDE |
| 201 21 727.9 | P1-27-GDE |
| 201 21 712.0 | P1-28-GDE |
| 203 00 961.4 | P1-31-GDE |
| 202 20 446.4 | P1-32-GDE |
| 203 02 716.7 | P1-36-GDE |

Übertragungsvertrag – Assignment Agreement

| | |
|---|---|
| 203 19 175.7 | P1-39-GDE-1 |
| 20 2004 018 659.4 | P1-39-GDE-2 |
| 20 2005 021 372.1 | P1-45-GDE-1 |
| 20 2006 020 139.4 | P1-45-GDE-2 |
| 20 2007 018 854.4 | P1-59-GDE |

## Marken – Trademarks:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| 395 29 096.1 | P1-1-MDE |
| 301 45 081.1 | P1-6-MDE |

## EA (Eurasien – Eurasia):

### Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| EA 200701188 / EA 012510 | P1-39-PWOEA |
| EA 200701637 | P1-43-PWOEA |
| EA 200701638 | P1-44-PWOEA |
| EA 200800288 / EA 012831 | P1-45-PWOEA |
| EA 200800553 | P1-50-PWOEA-1 |
| EA 200800552 | P1-50-PWOEA-2 |
| EA 200800991 | P1-63-PEA |
| EA 200900067 | P1-69-PEA |



Die Übertragung betrifft jeweils alle nationalen Phasen der erteilten Patente EA 012510 und EA 012831, die unter dem jeweiligen Aktenzeichen erfasst sind.

Die Assignment includes all national phases of the granted EA-patents EA 012510 und EA 012831 recorded under their respective file numbers.

EP (Anmeldungen beim EPA – Application before the EPO):

Patentanmeldungen – Patent Applications:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| EP 05850227.9 / EP 1 825 068 | P1-39-PWOEP |
| EP 05002205.2 / EP 1 698 733 | P1-43-PEP |
| EP 05002204.5 / EP 1 688 544 | P1-44-EP |
| EP 06762559.0 /EP 1 907 634 | P1-45-PWOEP |
| EP 06762754.7 / EP 1 917 400 | P1-50-PWOEP-1 |
| EP 06762753.9 / EP 1 917 399 | P1-50-PWOEP-2 |
| EP 06004147 | P1-56-PEP |
| EP 06013136.4 / EP 1 830 287 | P1-56-PEP-2 |
| EP 07023977.7 / EP 1 939 359 | P1-59-PEP |
| EP 08008210.0 / EP 1 988 218 | P1-63-PEP |

Bei der EP 06004147 wird das für die EP 06013136.4 beanspruchte Prioritätsrecht
übertragen.

With respect to EP 06004147 the priority claimed for EP 06013136.4 is assigned.

EU (Harmonisierungsamt – Harmonization Office):

Marken – Trademarks:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| EU 001471721 | P1-1-MEU |
| EU 002536068 | P1-6-MEU |
| EU 002785517 | P1-30-MEU |



Geschmacksmuster – Designs:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| EU 000258520 | P1-42-DEU |
| EU 000339676 | P1-45-DEU |
| EU 000351184 | P1-46-DEU |
| EU 000410865 | P1-52-DEU |
| EU 000432257 | P1-53-DEU |
| EU 000455639 | P1-54-DEU |
| EU 000477781 | P1-55-DEU |
| EU 000617592 | P1-60-DEU |
| EU-000658919 | P1-62-DEU |
| EU 000764444 | P1-67-DEU |

Die Übertragung betrifft jeweils alle Geschmacksmuster, die unter dem jeweiligen Aktenzeichen erfasst sind.

Die Assignment includes all designs recorded under the respective file number.

**GB (Großbritannien – Great Britain):**

Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| EP 0 988 425 (UK) | P1-4-PEPGB |

Britischer Teil des europäischen Patentes EP 0 988 425.

British part of European patent EP 0 988 425.



IN (Indien – India):

Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| IN 2952/CHENP/2007 | P1-39-PWOIN |
| IN 4309/CHENP/2006 | P1-40-PWOIN |
| IN 4573/CHENP/2006 | P1-41-PWOIN |
| IN 3822/CHENP/2007 | P1-43-PWOIN |
| IN 3824/CHENP/2007 | P1-44-PWOIN |
| IN 1136/CHENP/2008 | P1-50-PWOIN-1 |
| IN 1137/CHENP/2008 | P1-50-PWOIN-2 |
| IN 5224/CHENP/2008 | P1-56-PWOIN |
| IN 1086/CHE/2008 | P1-63-PIN |
| IN 188/CHE/2009 | P1-69-PIN |

Geschmacksmuster – Designs:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| Appl.-No. 204828 | P1-54-DIN |

JP (Japan – Japan):

Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| JP 4,200,391 | P1-4-PWOJP |
| JP 4,086,128 | P1-9-PJP |
| JP 2004-359,164 | P1-39-PJP |
| JP 2005-126,992 | P1-40-PJP |
| JP 2007-511,993 | P1-41-PWOJP |
| JP 2008-525,419 | P1-50-PWOJP-1 |




| JP 2008-525,418 | P1-50-PWOJP-2 |
|---|---|
| JP 2008-556,685 | P1-56-PWOJP |
| JP 2007-329,840 | P1-59-PJP |
| JP 2008-117,976 | P1-63-PJP |
| JP 2008-159,583 | P1-66-PJP |

## KR (Südkorea – South Korea):

### Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| KR 10-2008-7005669 | P1-50-PWOKR-1 |
| KR 10-2008-7005813 | P1-50-PWOKR-2 |
| KR 10-2008-0040340 | P1-63-PKR |

## MX (Mexiko Mexico):

### Patente – Patents:

| Aktenzeichen/File Number: | Unser Zeichen/Our Reference: |
|---|---|
| MX 2007/009315 | P1-43-PWOMX |
| MX 2007/009314 | P1-44-PWOMX |



**§ 3 Verpflichtungen für PILEPRO**

(1) PILEPRO ist verpflichtet, sämtliche für die Umschreibung der oben genannten Schutzrechte in den Registern der nationalen und regionalen Patent- und Markenämter erforderli-

**§ 3 Obligations for PILEPRO**

(1) PILEPRO is obliged to provide all documents and all signatures required and necessary for the transfer of the above-listed protective rights in the registries of the national and re-

chen Unterlagen zu übergeben und sämtliche für die Umschreibung erforderlichen Unterschriften zu leisten.

gional patent and trademark offices.

(2) PILEPRO gibt seine Zustimmung, dass CONTEXO die erforderlichen Umschreibungen der Schutzrechte bei den zuständigen Patent- und Markenämtern unverzüglich in die Wege leiten.

(2) PILEPRO allows, that CONTEXO immediately initiates the transfers of the protective rights at the responsible patent and trademark offices.

(3) PILEPRO ist verpflichtet, die gesamte technische Dokumentation, die für die Realisierung der in den Schutzrechten definierten Gegenstände erforderlich ist, CONTEXO unverzüglich zu übergeben.

(3) PILEPRO is obliged to provide CONTEXO immediately with the entire technical documentation necessary for realizing the subject-matters defined in the protective rights.

(4) PILEPRO ist verpflichtet, sämtliche für das Vermarkten und die Herstellung der Produkte für Rückwandhaltesysteme außerhalb der Vereinigten Staaten von Amerika erforderlichen Unterlagen CONTEXO unverzüglich zu übergeben. Dies beinhaltet insbesondere Information über sämtliche Hersteller und Kunden derartiger Produkte außerhalb der Vereinigten Staaten von Amerika.

(4) PILEPRO and its affiliated companies are obliged to provide CONTEXO immediately with the entire documentation necessary for the marketing and the production of products related to retaining wall systems outside the United States of America. This includes in particular information about all producers and customers of such products outside the United States of America.

(5) Mit Inkrafttreten der Vereinbarung ist PILEPRO sowie mit PILEPRO verbundene Unternehmen nicht mehr

(5) Upon existence of the agreement PILEPRO and companies affiliated to PILEPRO is not authorized anymore

perechtigt, ohne Zustimmung von CONTEXO die in den Schutzrechten definierten Gegenstände, in den Ländern, in denen die Schutzrechte eingetragen oder angemeldet sind, zu benutzen.

6) Mit Unterzeichnung der Vereinbarung tritt PILEPRO sämtliche sich aus den Schutzrechten ergebenden Rechte, insbesondere die sich aus den Eintragungen in den Registern der Patent- und Markenämter ergebenden Rechte, an CONTEXO ab.

§ 4 Wettbewerbsverbot

(1) PILEPRO sowie mit PILEPRO verbundene Unternehmen sind mit Unterzeichnung dieser Vereinbarung dazu verpflichtet, alle das technische Gebiet von Rückhaltewandsystemen betreffenden Kenntnisse Dritten gegenüber geheim zu halten.

(2) PILEPRO sowie mit PILEPRO verbundene Unternehmen verpflichten sich binnen eines Zeitraumes von fünf Jahren nach Unterzeichnung dieser Vereinbarung, außerhalb der Vereinigten Staaten von Amerika auf dem technischen Gebiet von Rückhaltewandsystemen ohne vorherige

to use the subject-matters defined in the protective rights in those countries in which the protective rights are valid without the allowance of CONTEXO.

(6) Upon signing of this agreement PILEPRO assigns all rights which arise out of the protective rights, in particular all rights which are based on the entries in registries of the patent and trademark offices, to CONTEXO.

§ 4 Non-Competition Clause

(1) Upon signing of this agreement PILEPRO and companies affiliated to PILEPRO are obliged to keep know-how relating to the technical field of retaining wall systems confidential.

(2) During a period of five years upon signing of this agreement PILEPRO and companies affiliated to PILEPRO are obliged not to become active in her own name or for third parties outside the United States of America in the technical field of retaining wall systems without prior written declara-



,chriftliche Zustimmung durch CON-
TEXO weder in eigenem Namen
noch für Dritte tätig zu werden.

(3) Sollte PILEPRO oder ein mit PI-
LEPRO verbundenes Unternehmen
ohne Zustimmung von CONTEXO
außerhalb der Vereinigten Staaten
von Amerika auf dem technischen
Gebiet von Rückhaltewandsystemen
in eigenem Namen oder für Dritte
tätig geworden sein, muss PILEPRO
binnen acht Wochen nach schriftli-
cher Aufforderung durch CONTEXO
eine Vertragsstrafe in Höhe des drei-
fachen Lizenzsatzes an CONTEXO
zahlen, welcher bei korrekter Abwick-
lung gemäß § 5 (3) dieser Vereinba-
rung zu zahlen gewesen wäre.

(4) PILEPRO sowie mit PILEPRO
verbundenen Unternehmen ist es für
einen Zeitraum von fünf Jahren nach
Unterzeichnung dieser Vereinbarung
untersagt, ohne vorherige schriftliche
Zustimmung von CONTEXO mit au-
ßerhalb der Vereinigten Staaten von
Amerika ansässigen Herstellern oder
Kunden auf dem technischen Gebiet
von Rückhaltewandsystemen mittel-
bar oder unmittelbar Kontakt aufzu-
nehmen oder mit diesen Geschäfte
abzuschließen.

tion of consent by CONTEXO.

(3) Should PILEPRO or a company
affiliated to PILEPRO have become
active outside the United States of
America in her own name or for third
parties on the technical field of retain-
ing wall systems without consent of
CONTEXO, PILEPRO is obliged to
pay within eight weeks after having
been notified by CONTEXO in writing
a agreement penalty which is three
times of the regular royalty which
would have to be paid for a correct
executing of the order according to §
5 (3) of this agreement.

(4) During a period of five years upon
signing of this agreement it is prohi-
bited for PILEPRO and companies
affiliated to PILEPRO to directly or
indirectly come into contact with pro-
ducers or customers having their
place of business outside the United
States and being active in the tech-
nical field of retaining wall systems
without prior written declaration of
consent by CONTEXO.



§ 5 Bezugsbindung

(1) Ab Unterzeichnung dieser Ver-
einbarung sind PILEPRO sowie mit
PILEPRO verbundene Unternehmen
dazu verpflichtet, sämtliche das tech-
nische Gebiet von Rückhaltewand-
systemen betreffenden Produkte, die
außerhalb des Staatsgebietes der
Vereinigten Staaten von Amerika
zum Einsatz kommen werden, aus-
schließlich von CONTEXO oder von
einem durch CONTEXO lizensierten
Unternehmen zu beziehen.

(2) Nur mit vorheriger schriftlicher
Zustimmung durch CONTEXO sind
PILEPRO oder mit PILEPRO ver-
bundene Unternehmen berechtigt,
von außerhalb der Vereinigten Staa-
ten von Amerika ansässigen Dritten
Rückhaltewandsysteme betreffende
Produkte zu erwerben. PILEPRO ist
dann dazu verpflichtet, an CONTEXO
eine Lizenzgebühr zu entrichten, die
der entspricht, welche CONTEXO
erhalten hätte, wenn die Produkte
von einem durch CONTEXO lizen-
sierten Unternehmen erworben wor-
den wären.

(3) CONTEXO erteilt der mit PILEP-
RO verbundenen Firma WallProfile

§ 5 Obligation to Purchase

(1) Upon signing of this agreement
PILEPRO and companies affiliated to
PILEPRO are obliged to purchase all
products related to the technical filed
of retaining wall systems, which shall
be used outside the United States of
America, exclusively from CONTEXO
or a company licensed by CONTEX-
O.

(2) Only after a previous written dec-
laration of consent issued by CON-
TEXO PILEPRO or a company affi-
liated to PILEPRO is allowed to pur-
chase from third parties having their
place of business outside the United
States of America products relating to
retaining wall systems. PILEPRO is
than obliged to pay royalties to
CONTEXO, the amount of which cor-
responds to the amount which CON-
TEXO would have received, if those
products would have been purchased
from a company being licensed by
CONTEXO.

(3) CONTEXO grants a non-
exclusive license to Wall-Profile,

imbH, Fürstenrieder-Str. 279a, 81377 München, Deutschland, für sämtliche Schutzrechte eine einfache Lizenz. Eine Kopie des Lizenzvertrages zwischen CONTEXO und de Wall-Profile GmbH ist als Anlage A beigefügt.

(4) Sollte PILEPRO oder ein mit PILEPRO verbundenes Unternehmen ohne vorherige Zustimmung von CONTEXO Rückhaltewandsysteme betreffende Produkte von Dritten außerhalb der vereinigten Staaten von Amerika erwerben, wird binnen vier Wochen nach schriftlicher Aufforderung durch CONTEXO eine Vertragsstrafe in Höhe des dreifachen Lizenzsatzes fällig, welcher bei korrekter Abwicklung gemäß § 5 (3) zu zahlen gewesen wäre.

§ 6 Informationspflicht

(1) PILEPRO sowie mit PILEPRO verbundene Unternehmen sind ab Unterzeichnung dieser Vereinbarung dazu verpflichtet, CONTEXO voll umfänglich über eventuelle Aufträge von außerhalb der Vereinigten Staaten von Amerika ansässigen Kunden innerhalb von zwei Wochen nach Anfrage zu unterrichten.

Fürstenrieder-Str. 279a, 81377 Munich, Germany, a company being affiliated to PILEPRO. A copy of the license agreement between CONTEXO and Wall-Profile is attached as Annex A.

(4) Should PILEPRO or a company affiliated to PILEPRO purchase from third parties outside the United States of America products related to retaining wall systems without consent of CONTEXO, PILEPRO is obliged to pay within four weeks after having been notified by CONTEXO in writing a agreement penalty which is three times of the regular royalty which would have to be paid for a correct executing of the order according to § 5 (3) of this agreement.

§ 6 Reporting Requirements

(1) Upon signing of this agreement PILEPRO and companies affiliated to PILEPRO are obliged to inform CONTEXO in detail about all potential orders of customers having their place of business outside the United States of America within two weeks after the receipt of a letter of inquiry.

2) PILEPRO sowie mit PILEPRO verbundene Unternehmen sind zur getrennten Buchführung über sämtliche Aufträge außerhalb der Vereinigten Staaten von Amerika verpflichtet, für die CONTEXO seine Zustimmung gegeben hat. Die Buchführung kann auf Anfrage von CONTEXO von einem unabhängigen Wirtschaftsprüfer geprüft werden.

(3) PILERPO sowie die mit PILEPRO verbundenen Unternehmen sind verpflichtet, innerhalb von zwei Wochen nach Eingang der Zahlung durch den Kunden die an CONTEXO oder an das von CONTEXO lizensierte Unternehmen zu leisten Lizenzgebühren zu überweisen.

## § 7 Nichtangriffsabrede

PILEPRO sowie mit PILEPRO verbundene Unternehmen verpflichten sich, die Schutzfähigkeit des lizenzierten Know-hows bis sieben Jahre nach einer Kündigung des Lizenzvertrages mit der Wall-Profile GmbH nicht rechtlich in Frage zu stellen oder gerichtlich anzugreifen oder Dritte bei einem Angriff auf das Know-how und seine Schutzfähigkeit zu unterstützen.

(2) PILEPRO and companies affiliated to PILEPRO are obliged to keep separate records relating to all orders from the outside of the United States of America for which CONTEXO has given her consent. Upon request of CONTEXO the bookkeeping can be inspected by an independent accountant.

(3) PILEPRO and companies affiliated to PILEPRO are obliged to transfer within two weeks after receipt of the payment of the customer the royalties to be paid to CONTEXO or to the company being licensed by CONTEXO.

## § 7 No-Challenge Clause

Up to five years after an extraordinary cancellation of the license agreement with Wall-Profile GmbH PILEPRO and companies affiliated to PILEPRO shall not challenge the validity of the licensed know-how or file an action for this purpose or support third parties in such a challenge.

Übertragungsvertrag – Assignment Agreement

## § 8 Außerordentliche Kündigung

(1) Sollte PILEPRO oder ein mit PI-LEPRO verbundenes Unternehmen gegen eine der in dieser Vereinbarung definierten Verpflichtungen verstoßen, steht CONTEXO ein außerordentliches Kündigungsrecht des mit der Wall-Profile GmbH abgeschlossenen Lizenzvertrages zu.

(2) Bei einer außerordentlichen Kündigung des Lizenzvertrages mit der Wall-Profile GmbH sind PILEPRO sowie mit PILEPRO verbundene Unternehmen nicht mehr berechtigt, für einen Zeitraum von fünf Jahren nach erfolgter Kündigung außerhalb der Vereinigten Staaten von Amerika auf dem technischen Gebiet von Rückhaltewandsystemen in eigenem Namen oder für Dritte tätig zu werden.

## § 9 Kosten

Die mit der Umschreibung verbundenen Kosten werden von CONTEXO getragen.

## § 8 Extraordinary Termination

(1) Should PILEPRO or one of the companies affiliated to PILEPRO infringe one of the obligations defined in this agreement, CONTEXO shall have the right to extraordinary terminate the license agreement with Wall-Profile GmbH.

(2) In case of an extraordinary termination of the license agreement with Wall-Profile GmbH, PILEPRO and companies affiliated to PILEPRO are obliged not to become active in her own name or for third parties outside the United States of America in the technical field of retaining wall systems.

## § 9 Costs

The costs caused by the transfer of rights are paid by CONTEXO.

